# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4935 | **DATE** | 1/7/2005 |
| **CASE TITLE** | DAVID ROSS vs. ED NAPLETON HONDA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Motion (14-1) to dismiss is granted in part and denied in part. Motion (14-2) to strike is denied. Enter memorandum opinion and order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 1 2 2005 date docketed | |
| ✓ | Docketing to mail notices. | | | 18 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID ROSS,

　　Plaintiff,

v.

ED NAPLETON HONDA, INC.,

　　Defendant.

No. 04 C 4935
Judge James B. Zagel

**DOCKETED**
**JAN 12 2005**

## MEMORANDUM OPINION AND ORDER

Plaintiff David Ross ("Ross") has filed a two-count amended Complaint against Defendant Ed Napleton Oak Lawn Imports ("Napleton") under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq*. The first count alleges harassment and discriminatory discharge on the basis of Ross's disability. The second count alleges that Napleton failed to reasonably accommodate Ross after he became disabled. Napleton moves to dismiss both counts, arguing that Ross failed to exhaust his administrative remedies when he did not raise the allegations of harassment and lack of reasonable accommodation in the charge he filed with the Illinois Department of Human Rights ("IDHR").

Viewed in the light most favorable to Ross, the facts establish that Napleton employed Ross as a used car manager between March 1999 and March 2003. In November 2002, Ross was seriously injured in a car accident in Texas. The accident resulted in a two-week hospitalization, and Ross was unable to return to work until March 2003. Upon his return, Ross required the use of a cane for walking and was ordered by his physician to work no more than 15 hours per week. Ross ultimately worked for less than one month before his discharge.

In a complaint filed *pro se* with the IDHR after his discharge, Ross alleged:

> I began my employment with the above named Respondent on March 15, 1999. My last position was Used Car Manager. On November 2002, I suffered an accident and became disabled. Respondent was aware of my disability. From November 2002 till March 2003 I was on leave due to my disability. Upon my return to work in March 2003, Respondent requested that I work beyond my restricted hours. When I informed Respondent that I would not be able to work the hours requested by Respondent, I was discharged. I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.[1]

This was the full extent of Ross's written application; however, he supplemented the application with a letter to investigator Tyler Grady. In the letter, Ross explained his effort to win back his job at the time he was fired: specifically, by offering to work a 42-hour schedule rather than the 60-hour week Napleton allegedly required. Ross stated that "[a]ll I wanted was for us to try it out for 30 to 60 days to see if it was fez able (sic) for myself as well as the company. They wouldn't even offer or allow me to work doing something else within the organization unless I was going to work 60 hours." The IDHR subsequently conducted an investigation of Ross's charge and the EEOC issued Ross a "right to sue" letter in April 2004.

On September 22, 2004, Ross filed an Amended Complaint in federal court alleging discriminatory discharge and harassment by Napleton, as well as Napleton's failure to accommodate Ross's disability. Ross's Complaint alleges several specific instances of harassment and lack of reasonable accommodation by Napleton's General Manager, Ed Walczak, between the time of Ross's injuries and his eventual discharge, including:

---

[1] On the form alleging discrimination, Ross checked the box for disability-based discrimination. Of note, Ross designated the earliest date that the discrimination took place as March 27, 2003; that was also the date Ross designated as the latest date on which discrimination took place.

2

- several harassing phone calls by Walczak to Ross, including one on the day of Ross's return to Illinois after his hospitalization in Texas, and twice-weekly telephone calls by Walczak to Ross during Ross's recuperation: in each, Walczak allegedly pushed for Ross's early return to work;

- Napleton's failure to send someone to pick up Ross at his home on the day he was supposed to return to work, after Walczak's promise that this would happen;

- almost daily demands that Ross work beyond the hours allowed by his physician; and

- requiring Ross to work different positions on any given day, including appraising cars, working in finance, and closing sales of new and used cars.[2]

Napleton asserts that Ross's claims of harassment and of Napleton's failure to accommodate his disability must be dismissed because they fall outside of the scope of his IDHR charge.

As a general rule, a plaintiff "may pursue a claim not explicitly included in an EEOC complaint only if [the] allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). Only when the complaint's allegations "are 'like or reasonably related to' those contained in the EEOC" charge do they satisfy this standard. *Id.* (quoting *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). I must look for a "reasonable relationship between the allegations in the charge and the claims in the complaint." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). I must also consider whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

---

[2]The Complaint also alleges that Napleton's then-President Mike Browner said to Ross, in front of co-workers and customers, "Get up, I want to see you walk." This humiliated Ross, who had difficulty walking even short distances and who depended upon a walker to do so.

3

As both Ross and Napleton observe, the purpose of this rule is to encourage resolution of the dispute during the administrative investigation, as well as to give the employer notice of the employee's charges. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). Therefore, the "EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. Western*, 31 F.3d at 501 (emphasis in original). Ross asks me to find that the extended allegations of his federal complaint fall within the scope of his IDHR charge, particularly in light of his *pro se* status at the time he filed the charge. However, I am not convinced that the IDHR charge gave Napleton sufficient notice of the three distinct charges subsequently raised in Ross's federal complaint, particularly when the alleged harassment involved different individuals and stemmed from different conduct than the discrimination plaintiff allegedly suffered when he was discharged because of his inability to work longer hours.

Napleton points to several Seventh Circuit decisions in which claims first raised in complaints (or even later, in response to a defendant's dispositive motion) were dismissed because they fell outside of the scope of the prior EEOC charge. *See, e.g., Cheek v. Peabody*, 97 F.3d at 202-203 (finding that allegations of sexual harassment fell outside the scope of the EEOC charge, which alleged only disparate treatment; complaint implicated different individuals and stemmed from different conduct); *and Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (holding that an allegation of discriminatory suspension was not reasonably related to the discriminatory actions alleged in the EEOC charge, including unpleasant job assignments, lack of overtime and failure to promote). In response, Ross focuses on the Seventh Circuit's *Haugerud* decision, in which the Court considered the summary judgment of a complaint

4

alleging sex discrimination and hostile work environment. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689-90 (7th Cir. 2001). The Court found that these allegations were not beyond the scope of the plaintiff's EEOC charge, in which she charged that the defendant school district's reorganizations eliminated jobs held by women. *Id.* (noting that plaintiff's EEOC complaint also included "allegations of newly imposed maintenance assignments, negative comments, and an increased workload," which were consistent with the allegations made in the plaintiff's federal complaint). The Court observed that the defendant had "no reason to be surprised by the nature of her legal claims, because her [EEOC] complaint stated that it was based on 'sex discrimination and harassment.'" *Id.* at 690.

Ross's Complaint falls somewhere between the precedent cited by both parties. As Ross duly notes, Napleton relies on cases in which new allegations were not raised until after the EEOC charge and the federal complaint were filed. However, the thrust of those decisions emphasized the disparity between the facts and circumstances alleged in the initial charge and in the subsequent court proceeding. In *Conley*, the plaintiff's new allegation of discriminatory suspension involved a "discrete action, taken at a definite time," that was not reasonably related to the actions contained in the EEOC charge. 215 F.3d at 710. Likewise, in *Cheek v. Peabody*, the new charges "implicate[d] different individuals and stem[med] from different conduct." 97 F.3d at 202-03.

In *Haugerud*, the plaintiff's EEOC charge contained sufficient detail to allow the Court to conclude that the defendant clearly had prior notice of the plaintiff's allegation of sex discrimination. Unfortunately, Ross's complaint offers no such detail, at least with respect to his allegation of employer harassment. Construed as broadly as possible, Ross's IDHR charge

5

("[w]hen I informed Respondent that I would not be able to work the hours requested . . . I was discharged") asserts discriminatory discharge and arguably a lack of reasonable accommodation, in that the charge suggests no effort by Defendant to accommodate Ross's need to work restricted hours. The charge makes no mention whatsoever of Walczak's alleged harassing phone calls, nor of the incident with Brown. Those events occurred prior to March 27, 2003, the window of discrimination identified in Ross's IDHR charge. Standing alone, the harassment allegations in Ross's complaint do not fall within the scope of his earlier charge.

To stave off dismissal of his harassment claim, Ross asks me to look beyond the face of the IDHR charge and consider the "breadth" of the subsequent investigation. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) ("an inquiry into the scope of the charge always entails an inquiry beyond the face of the complaint into the legal characterizations that surround the barebones of the factual allegations contained in the charge"). *Accord Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) ("[t]here are cases where courts have looked beyond the four corners of the EEOC charge form").[3] Ross points to documents in the IDHR file (including Ross's letter to the investigator) that focus on Napleton's requests that Ross work beyond his restricted hours. Ross offers these as evidence that the IDHR investigation put Napleton on notice that harassment was, so to speak, on the table. Ross asserts that "a work

---

[3]In *Cheek v. Western*, the Seventh Circuit considered both a sworn affidavit filed by the plaintiff in support of her EEOC charge, as well as allegations made in a sixteen-page, handwritten letter sent by the plaintiff to the EEOC. 31 F.3d at 502. The Court considered the latter "only to the extent that the letter may be considered an amendment to the original charge within the meaning of 29 C.F.R. § 1601.12(b) . . . [which] allows a charge to be amended 'to clarify and amplify allegations made therein.'" *Id.* The Court emphasized that these additional allegations "cannot expand the scope of the allegations in [plaintiff's] original charge; they may only 'clarify or amplify' the allegations in the charge." *Id.* at 503.

6

situation where an employer repeatedly requests that an employee with a disability work beyond his restricted hours *can indeed* (depending on the facts) constitute harassment" rising to the level prohibited by the ADA. *Pl. Resp. Br.* at 5 (emphasis in original).

Even considering this evidence, Ross's claim of harassment does not fall within the scope of the IDHR charge. The specific allegations of harassment found in Ross's complaint focus on Walczak's behavior (harassing telephone calls) before Ross's return to work. Those events occurred prior to the dispute over Ross's schedule and clearly involve different issues and different conduct than that identified in the initial charge. *Cheek v. Peabody*, 97 F.3d 202-03. *Cf. Cheek v. Western*, 31 F.3d at 501 (finding claims of racial discharge and denial of promotion cognizable because plaintiff specifically described the conduct giving rise to these claims in the EEOC charge and in an affidavit submitted to the EEOC). Similarly, Ross's only other allegation of harassment – Browner's allegedly humiliating demand that Ross "get up" and walk in front of co-workers and customers – has no connection to the facts or circumstances raised in Ross's IDHR charge.[4] Because the allegations of harassment fall outside of the scope of Ross's IDHR charge, even "broadly" construed, they cannot form a basis of Ross's present lawsuit. Count I of Ross's claim is dismissed to the extent that it alleges harassment, and those elements of the Complaint alleging harassing behavior are ordered stricken. Only the aspects of the count alleging discriminatory discharge will remain.

---

[4]The remaining contested allegations focus on Napleton's insistence that Ross work beyond his restricted hours in the weeks leading up to his discharge. These allegations are not specifically framed as either harassment or as a failure to accommodate Ross's disability. They appear to me to be an issue of accommodation, and I address them as such in the following paragraph.

7

On the other hand, I need not look beyond the face of Ross's IDHR charge to find that his subsequent failure to accommodate claim (Count II) is reasonably related to the initial charge. That charge notified Napleton that its decision to discharge Ross because of his restricted hours was the basis of his complaint. The issue of Ross's limited availability is reasonably related to Napleton's accommodation (or lack thereof) of Ross's disability. Furthermore, the accommodation claim could "reasonably be expected to grow out of [the IDHR] investigation" of Ross's charge. *Cheek v. Western,* 31 F.3d at 500. This, in fact, is precisely what occurred. The notes from the IDHR investigation demonstrate that Napleton's manager was questioned about Ross's hours before and after his disability, Ross's request to work certain hours, work schedules proposed by both parties, and Napleton's desire for a full-time employee. Ross's subsequent and specific allegations of disputes regarding his schedule and Napleton's lack of accommodation served to "clarify or amplify" the allegations of his initial charge. *Id.* at 503. Count II of Ross's claim does not fail for want of exhausting administrative remedies.

For these reasons, Defendant's Motion to Dismiss Count I of Plaintiff's Complaint is GRANTED IN PART; Defendant's Motion to Dismiss Count II is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 7\\an 2005

8